**George KNAUER and Ann Knauer**

v.

**JOHNS–MANVILLE CORPORATION, et al.**

Civ. No. K–80–3302.

United States District Court, D. Maryland.

Jan. 31, 1986.

John W. Pfeifer, James J. Fabian, and Pfeifer & Fabian, P.A., Baltimore, Md., Thomas W. Henderson, Antonio D. Pyle, and Henderson & Goldberg, P.C., Pittsburgh, Pa., for plaintiffs.

H. Emslie Parks, Leland S. Van Koten, John W. Geldmacher, and Wright & Parks, Towson, Md., for defendant Celotex Corp.

Michael B. Mann, Donald K. Krohn, and Merriman & Mann, P.A., Baltimore, Md., for defendant Eagle-Picher Industries, Inc.

Andrew J. Graham and Kramon & Graham, P.A., Baltimore, Md., for defendant H.K. Porter.

Donald A. Krach, F. Ford Loker, and Niles, Barton & Wilmer, Baltimore, Md., for defendant Keene Corp.

Edward C. Mackie, Glenn W. Trimmer, and Rollins, Smalkin, Richards & Mackie, Baltimore, Md., for defendant Nicolet Industries, Inc.

Francis L. Casey, William Nussbaum, and Hogan & Hartson, Washington, D.C., for defendant Owens-Illinois, Inc.

E. Dale Adkins, III, M. Bradley Hallwig, and Anderson, Coe & King, Baltimore, Md., for defendant Pittsburgh-Corning Corp.

Paul Walter, John B. Isbister, Ruth Fahrmeier, and Tydings & Rosenberg, Baltimore, Md., for defendant Johns-Manville Corp.

Edward F. Houff and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for defendant Armstrong World Industries, Inc.

**1372**

FRANK A. KAUFMAN, Chief Judge.

George Knauer and his wife, Ann, instituted in this Court on December 26, 1980 personal injury and consortium claims against thirteen asbestos manufacturers, alleging that George Knauer developed mesothelioma from exposure to the asbestos products of defendants. On May 1, 1982, George Knauer died, allegedly, according to plaintiff Ann Knauer, from mesothelioma. Diversity jurisdiction is present.

■ On May 6, 1985, Ann Knauer moved to amend the original complaint to add a survival action and a wrongful death action.[1] Over an objection stated by defendant Armstrong World Industries, Inc. (hereinafter Armstrong World) on behalf of all defendants, this Court on May 16, 1985 granted Ann Knauer leave to amend the complaint. Thereafter, Armstrong World, again acting on behalf of all defendants, asked this Court to reconsider its said decision to permit amendments to the complaint. On June 18, 1985, at the end of the second of two hearings held on the record, the undersigned Judge of this Court denied, preliminarily, defendants' motion to reconsider.[2]

■ Essentially, defendants have requested this Court either to rescind its Order permitting the complaint to be amended, or to dismiss on the merits the wrongful death and the survival actions because neither of them states a cause of action. Amendments to complaints in federal cases are liberally granted.[3] When, however, it appears to a certainty that a plaintiff is not entitled to relief, leave to amend a complaint should be denied.[4] In the case at bar, leave to amend has been appropriately granted and will not be rescinded because it is not clear that plaintiff's wrongful death and survival actions fail to state colorable claims. However, whether defendants' alternative request for dismissal should be granted with regard to either or both of those actions poses two difficult questions.[5]

1. Seemingly, that motion should have been filed as a motion to permit plaintiff to serve a supplemental pleading under Fed.R.Civ.P. 15(d) rather than as a motion to amend plaintiff's complaint under Fed.R.Civ.P. 15(a), because the events giving rise to the wrongful death claim, i.e., the death of George Knauer, occurred *subsequent to* the filing of the original complaint. *See Grady v. Irvine,* 254 F.2d 224, 228 (4th Cir.) (a wrongful death action is a "new and different" action from a personal injury action), *cert. denied,* 358 U.S. 819, 79 S.Ct. 30, 3 L.Ed.2d 60 (1958). For relation back purposes, however, "the technical distinction between the two is not of critical importance, and is frequently disregarded by the courts.... So long as the test of Fed.R. Civ.P. 15(c) is met, a supplemental pleading should ordinarily be given the same relation-back effect as an amended pleading." *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 609 n. 3 (4th Cir.) (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1508 (1971 & Supp. 1985)), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980). In the instant case, the same relation-back analysis therefore applies whether plaintiff's motion is considered under Rule 15(d) or under Rule 15(a). It is also to be noted that plaintiff's said motion cannot be characterized as a motion to conform to the evidence under Fed.R.Civ.P. 15(b) since there has not yet been a trial in this action. *See Butterman v. Walston & Co.,* 308 F.Supp. 534, 536 (E.D.Wis.1970).

2. The original Order granting leave to amend was signed by Judge Alexander Harvey, II in the absence due to illness of Judge James R. Miller, Jr., the trial judge to whom this case had been first assigned for trial. Subsequently, certain pretrial matters related to this case, including defendants' motion to reconsider Judge Harvey's said Order, were assigned to and heard by the undersigned Judge of this Court.

3. Fed.R.Civ.P. 15(c). *See also, e.g., Gillespie v. United States Steel Corp.,* 379 U.S. 148, 158, 85 S.Ct. 308, 314, 13 L.Ed.2d 199 (1964); *Davenport v. Ralph N. Peters & Co.,* 386 F.2d 199, 204 (4th Cir.1967).

4. *See, e.g., Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Development Fund Co.,* 608 F.2d 28, 42 (2d Cir.1979).

5. Because defendants' quest for dismissal of the wrongful death action for failure to state a claim upon which relief can be granted requires consideration of matters outside the pleadings, that issue is treated as one arising in the context of a motion for summary judgment under Fed. R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b). On the other hand, since defendants' quest for dismissal of the survival action relates only to the

## I. *Wrongful Death Action*

Initially, the question arises as to whether the wrongful death action, considered as stated by Ann Knauer alone, is time barred under Maryland's Wrongful Death Act, Md. Cts. & Jud. Proc. Code Ann. § 3–904 (1984). Three sub-questions must be addressed in order to decide that issue: (A) Does the doctrine of relation back apply if a statutory condition precedent rather than a statute of limitations is involved? (B) Is the filing of a wrongful death action within three years of a decedent's death a statutory condition precedent to the bringing of suit? (C) Is the three-year time requirement tolled by Maryland's Workmen's Compensation Act?

### A. Relation Back—Limitations

■ An action for wrongful death may be brought "for the benefit of the wife, husband, parent, and child of the deceased person." Md. Cts. & Jud. Proc. Code Ann. § 3–904(a) (1984). However, such action must "be filed within three years after the death of the injured person." *Id.* at § 3–904(g). George Knauer died on May 1, 1982. Ann Knauer did not move to add a wrongful death claim until May 6, 1985, three years and five days after her husband's death. Thus, Ann Knauer's death claim, on its face, was not timely filed unless it is saved by principles of either relation back or tolling.

Pursuant to Fed. R.Civ. P. 15(c), "[w]henever the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

> Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford. Thus, if the original pleading gives fair

notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged ... will relate back even though the statute of limitations has run in the interim.

3 J. Moore, *Moore's Federal Practice* ¶ 15.13[3], at 15–194 to –196 (1984) (footnotes omitted) (hereinafter 3 *Moore's Federal Practice* ).

In the usual statute of limitations case, "the matter of relation back of amendments to pleadings is properly one of federal practice under Rule 15(c) and ... no warrant exists for resort to state law." *Id.* at 15–190. Rule 15(c), however, can present a federal court with "a classic *Erie* choice of law problem...." *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 610 (4th Cir.), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980).[6]

In *Davis,* the personal representative of two decedents who died in a plane crash instituted suits in the state courts of Alabama against, *inter alia,* the airplane manufacturer. Judgment was obtained in one of these cases and a settlement was reached in the other. The executor, appointed by an Alabama probate court, of a third victim of the same crash, instituted suit in a North Carolina federal district court "five days prior to the running of the applicable North Carolina two-year statute of limitation...." *Id.* at 609. North Carolina law required that a wrongful death action be instituted by the ancillary administrator of the estate of the decedent, appointed by a North Carolina state court. At the time the North Carolina suit was instituted, the plaintiff-executor was not qualified as a North Carolina ancillary administrator. *Id.* at 610. Four months after the defendant filed its answer, the plaintiff sought to amend the complaint to reflect his then existing capacity as a qualified ancillary administrator. *Id.* at 609.

---

pleadings, that issue is considered in the context of Fed.R.Civ.P. 12(b)(6).

**6.** *See also Thomas v. Mitchell-Bradford Chemical Co.,* 582 F.Supp. 1373, 1375–76 (E.D.N.Y.

1984); *Covel v. Safetech, Inc.,* 90 F.R.D. 427, 429–33 (D.Mass.1981); Annot., 12 A.L.R.Fed. 233, 254–62 (1972).

Writing for Judge Widener and himself, with Judge Hall dissenting, Judge Phillips determined initially that North Carolina law "has considered amendments reflecting legal capacity acquired after filing of an original pleading to fall in [the category of entirely new causes of action], hence to preclude their allowance when this would defeat the limitations bar," *id.* at 610 (citations omitted), and that under that North Carolina standard, a "plaintiff's lack of capacity at the time of filing the original pleading prevented the statement of a cause of action at that time; that consequently the action was a nullity and provided nothing to which an amended pleading could be deemed to relate." *Id.* at 611 n. 7 (citation omitted). Contrasting the North Carolina approach with federal practice, Judge Phillips concluded that "the longstanding weight of federal authority would give relation back effect to [amendments changing capacity]." *Id.* at 610. In reaching that view, Judge Phillips looked specifically to similar cases decided under Federal Rule 15(c), *id.* at 610–11, and noted that under federal law, failure to state a claim in the original complaint is not an "impediment to the later allowance of an amendment having relation back effect...." *Id.* at 611 n. 8.

In addressing the conflict between state and federal law, Judge Phillips considered the teachings of *Erie*[7] and certain of its progeny,[8] including *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), and wrote that *"Hanna* generally commands application of Fed.R.Civ.P. 15(c) in the face of a contrary state rule, and specifically commands its application here," *id.* at 611, reasoning that,

as in *Hanna,* the federal rule in question is quite as broad in scope as the conflicting state rule.... That being so, *Hanna* commands that unless Rule 15(c) is invalid because violative of the Rules En-

abling Act, 28 U.S.C. § 2072 or the Constitution, ... it controls decision without regard to any contrary state rule.

*Id.* at 611–12 (footnote omitted) (citations omitted).

Judge Phillips also wrote that if Rule 15(c) were not

sufficiently broad in scope completely to cover the ground occupied by the state rule .... *Hanna* teaches that the choice between the two rules should not be made on a talismanic analysis of the outcome determination factor alone, but instead by consideration of the compatibility of the choice with *Erie's* twin aims: "discouragement of forum shopping and avoidance of inequitable administration of the laws." *[Hanna* ] [380 U.S.] at 468 [85 S.Ct. at 1142]....

*Id.* at 612. Concluding that neither goal was offended in *Davis* by the application of Rule 15(c), Judge Phillips held that the amended complaint would be deemed to relate back to the original complaint and thus would escape the bar of limitations. *Id.* at 612.

### B. Relation Back—Condition Precedent

If Maryland's Wrongful Death Act's three-year requirement is a statutory limitations provision, then Judge Phillips' *Erie* analysis in *Davis* is applicable and controlling herein. On the other hand, if that statutory provision constitutes an essential element of the within cause of action and is a condition precedent, then a different question is involved. In *Davis,* Judge Phillips noted that while the Supreme Court of North Carolina had at one time considered the time-for-filing period in its wrongful death statute to be a condition precedent to suit, i.e., "one integral to the cause of action," that court had later determined that such statutory filing period constituted an " 'ordinary statute of limitation' ".

---

7. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

8. Among the progeny of *Erie* which Judge Phillips considered were: *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Byrd v. Blue Ridge Rural Electric Coop., Inc.,* 356 U.S.

525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

*Davis,* 615 F.2d at 609 n.2, (citing to and quoting from *Stamey v. Rutherfordton Elec. Membership Corp.,* 249 N.C. 90, 105 S.E.2d 282 (1958)).

" '[T]he fact that all civil remedies for wrongful death derive from statute has important consequences. Since the right was unknown to common law, the legislatures which created the right were free to impose restriction upon it.' " *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974) (citing to and quoting from 2 Harper & James, *The Law of Torts* § 24.1, at 1285 (1956)). As to Maryland law, the Court of Appeals has written "that the period within which an action for wrongful death must be brought is more closely analogous to a condition precedent than to the traditional concept of a statute of limitations...." *Morrell v. Williams,* 279 Md. 497, 505, 366 A.2d 1040 (1976).[9]

In *Smith v. Westinghouse Electric Corp.,* 266 Md. 52, 291 A.2d 452 (1972), Judge Proctor, sitting by special assignment, summarized Maryland law as follows:

> In *Tucker v. State, Use of Johnson,* 89 Md. 471, 479, 43 A. 778, 781 (1899), this Court held that Article 67 of the Code "* * * * created a new cause of action for something for which the deceased person never had, and never could have had, the right to sue—that is to say, the injury resulting from his death. * * * *"
>
> In *State, Use of Stasciewicz v. Parks,* 148 Md. 477, 482, 129 A. 793, 795 (1925), plaintiff contended that the concluding proviso in this section of the Act was merely a limitation on the time within which the action should be brought, and, as such, that it could only be availed of by a plea of limitations. Defendant had filed a demurrer to the declaration. This Court held " * * * * that the provision in section 2 (now 4) of article 67 of the Maryland Code, requiring suits for wrongful death to be brought within twelve months after the death of the deceased person, is a condition precedent to the right to maintain the action, and that a declaration which discloses on its face that the suit was not brought within twelve months is bad on demurrer." See also, *Cotham and Maldonado v. Bd. of Co. Com.,* 260 Md. 556, 563, 273 A.2d 115, 120 (1971); *State, Use of Cavanaugh v. Arundel Park Corp.,* 218 Md. 484, 487, 147 A.2d 427, 428 (1959); *State, Use of Dunnigan v. Cobourn, Adm.,* 171 Md. 23, 25–26, 187 A. 881, 884 (1936); *London Guarantee & Accident Co. v. Balgowan Steamship Co., Ltd.,* 161 Md. 145, 157, 155 A. 334, 338 (1931); *State, Use of Burkhardt v. U.S.,* 165 F.2d 869, 871 (4th Cir.1947); *Smith, Adm. v. Potomac Edison Co.,* 165 F.Supp. 681, 684 (D.Md., 1958); *State ex rel Thompson v. Eis Automotive Corp.,* 145 F.Supp. 444 (D.Conn., 1956); *Anno.,* 67 A.L.R. 1070 (1930).

*Id.* 266 Md. at 55–56, 291 A.2d 452. Judge Proctor also wrote:

> The period of time within which suit must be filed under Article 67, section 4, *being a condition precedent to the institution of the action and not an ordinary statute of limitations,* the question of whether the suit is barred by the statute can be raised by plea, demurrer, motion for summary judgment or any other appropriate procedure.

*Id.* at 58, 291 A.2d 452 (emphasis added).

■ The timely filing requirement of the Maryland Wrongful Death Act "is a limitation upon the right created by that statute." *Smith v. Potomac Edison Co.,* 165 F.Supp. 681, 684 (D.Md.1958). Failure to bring suit within the statutory three-year period bars both the remedy and the right to sue. In *Slate v. Zitomer,* 275 Md. 534, 542, 341 A.2d 789 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976), Judge Eldridge wrote:

> The rule in Maryland is that, since the wrongful death statute created a new liability not existing at common law, compliance with the period of limitations for

---

9. *See also Anderson v. Sheffield,* 53 Md.App. 583, 586–87, 455 A.2d 63 (1983); *Rodzik v. New York Central R.R. Co.,* 169 F.Supp. 803, 805 (E.D.Mich.1959).

such actions is a condition precedent to the right to maintain the action. The period of limitations is part of the substantive right of action.

*Id.* at 542, 341 A.2d 789 (citations omitted). *See also Trimper v. Porter Hayden,* 305 Md. 31, 501 A.2d 446, 449 (Ct.App.1985) (citing cases), discussed more fully *infra* p. 1387 *et seq.* Judge Eldridge also noted in *Zitomer* that "the period of limitations" in Maryland's Wrongful Death Act "is a substantive provision rather than a procedural one."[10]  *Id.* 275 Md. at 543, 341 A.2d 789. Thus, unlike a limitation provision which merely makes a claim unenforceable, a condition precedent establishes a time period in which suit must be brought in order to avoid having the right to sue extinguished.[11]

In this case the question arises as to whether federal rather than state law applies in the within condition-precedent context. That requires a look at *Erie,* at the substantive-procedure analysis, *see* Justice Brandeis' majority opinion in *Erie,* 304 U.S. at 78, 58 S.Ct.at 822 and Justice Reed's dissent at 90, 92; at the outcome-determi-native formula discussed by Justice Frankfurter in *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), *see* C. Wright, *Law of Federal Courts,* 377–80 (4th ed. 1983); at the balancing approach between state and federal interests, *see Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), and at later Supreme Court decisions of which Professor Wright has written as follows:

[T]he Court again turned its attention to this problem in 1965 in *Hanna v. Plumer* [ 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ]. All of the fears that the Civil Rules might be limited or made ineffective by *Erie* were laid to rest, as the Court denounced "the incorrect assumption that the rule of *Erie R. Co. v. Tompkins* constitutes the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure." Cases that had seemed to put the rules in jeopardy were explained on the ground that "the holding of each such case was not that *Erie* commanded displacement of a Federal Rule by an inconsistent

---

**10.** *See also President and Directors of Georgetown College v. Madden,* 505 F.Supp. 557, 574 n. 30 (D.Md.1980) (statutes of limitations for wrongful death actions are "deemed substantive" because they "operate on the right and not merely the remedy"), *aff'd in part and dismissed in part,* 660 F.2d 91 (4th Cir.1981); *Leonard v. Wharton,* 268 F.Supp. 715, 718–19 (D.Md.1967) (discussing difference between a condition precedent and a true statute of limitations), *cert. denied,* 393 U.S. 1028, 89 S.Ct. 624, 21 L.Ed.2d 571 (1969).

**11.** *See, e.g., Roberts v. United States,* 498 F.2d 520, 526 (9th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *Maryland ex rel. Burkhardt v. United States,* 165 F.2d 869, 873–74 (4th Cir.1947); *Slate v. Zitomer,* 275 Md. 534, 542–43, 341 A.2d 789 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976). *See also Binnix v. Johns-Manville Products Corp.,* 593 F.Supp. 1180, 1182 (D.Md.1984), in which Judge Miller noted "the longstanding law of Maryland that a cause of action for wrongful death does not exist until the death of an injured person." Judge Miller explained:

In the instant case, the injured person, Mr. Binnix, was entitled to bring a personal injury action in 1976 when cancer was diagnosed. Up until he died in 1977, he continued to be entitled to bring suit. His death triggered a new cause of action for his family based on the wrongful act which allegedly injured him—*i.e.,* the act which would have entitled him "to maintain an action and recover damages if death had not ensued." *Md. Cts. & Jud. Proc. Code Ann.* § 3–901(e).

*Id.* at 1183. In *Trimper v. Porter Hayden,* 305 Md. 31, 501 A.2d 446 (Ct.App.1985), the claimants filed both wrongful death and survival actions more than three years after the death of the decedent. Judge Rodowsky ruled in that case that both actions were barred by limitations, and wrote (at 450 n. 1):

The cases before us factually do not present any issue of whether the beneficiaries under the wrongful death statute may bring a wrongful death action where the decedent died as a result of a latent disease after having known of the nature and cause thereof for more than three years prior to death. In this connection compare *Binnix v. Johns-Manville Products Corp.,* 593 F.Supp. 1180 (D.Md.1984), holding that wrongful death is a new cause of action which accrues at death, with CJ & 3–901(3), which defines "wrongful act," for purposes of the wrongful death statute, to mean "an act ... which would have entitled the party injured to maintain an action and recover damages if death had not ensued."

state rule, but rather that the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, *Erie* commanded the enforcement of state law."

Thus *Hanna* announces a bifurcated test. If one of the Civil Rules (or a statute) is valid and if, properly construed, it speaks to the question, it is controlling and no regard need be paid to contrary state provisions. " * * * [T]he court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgressed neither the terms of the Enabling Act nor constitutional restrictions."

The matter is very different if there is no rule directly in point and the court must make "the typical, relatively unguided Erie choice." Such questions cannot be resolved by a talismanic analysis of whether the outcome would be affected. Instead the problem must be viewed in the light of "the twin aims of the Erie rule; discouragement of forum-shopping and avoidance of inequitable administration of the laws."

C. Wright, *supra* p. 1376, at 382–83 (footnotes omitted).

Prior to *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), Justice Douglas concluded that despite Federal Civil Rule 3, which provides that "[a] civil action is commenced by filing a complaint with the court," state law would determine when an action is commenced for statute of limitations purposes. The plaintiff in *Ragan* had timely filed his automobile accident tort complaint, pursuant to diversity jurisdiction, in a Kansas federal district court within the two-year Kansas statutory limitations period; however, the defendant was not served until after that period had run. Under Kansas law, the lack of service was held to require the application of the Kansas statutory limitations bar, despite the tolling effect of Federal Civil Rule 3. "We cannot" wrote Justice Douglas, "give [the case] longer life in the federal court than it would have had in the state court without adding something to the cause of action. We may not do that consistent with *Erie....*" *Id.* 337 U.S. at 533–34, 69 S.Ct. at 1234–35. "For a long time *Ragan* puzzled and disturbed courts and commentators alike." 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4510, at 165 (1982) (hereinafter 19 Wright, Miller & Cooper); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 744 n. 6, 100 S.Ct. 1978, 1982 n. 6, 64 L.Ed.2d 659 (1980).

In 1980, in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), a case in which the "facts [were] indistinguishable from those in Ragan, only this time it was Oklahoma law that did not deem an action 'commenced' for purposes of the statute of limitations until service was effected upon the defendant," 19 Wright, Miller & Cooper, *supra* p. 1377, § 4510, at 166, the Supreme Court reaffirmed and explained *Ragan.* In *Walker*, Justice Marshall, writing for a unanimous Court, stated:

> This Court in *Hanna* distinguished *Ragan* rather than overruled it, and for good reason. Application of the *Hanna* analysis is premised on a "direct collision" between the Federal Rule and the state law. 380 U.S., at 472 [85 S.Ct., at 1143]. In *Hanna* itself the "clash" between Rule 4(d)(1) and the state in-hand service requirement was "unavoidable." 380 U.S., at 470 [85 S.Ct. at 1143]. The first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court. It is only if that question is answered affirmatively that the *Hanna* analysis applies.

446 U.S. at 749–50, 100 S.Ct. at 1984–85 (footnote omitted).

Since there is no direct conflict between the Federal Rule and the state law, the *Hanna* analysis does not apply.

Instead, the policies behind *Erie* and *Ragan* control the issue whether, in the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction. The reasons for the application of such a state service requirement in a diversity action in the absence of a conflicting federal rule are well explained in *Erie* and *Ragan*, see *supra*, [446 U.S.] at 744–746, [100 S.Ct., at 1982–1983], and need not be repeated here. It is sufficient to note that although in this case failure to apply the state service law might not create any problem of forum shopping, the result would be an "inequitable administration" of the law. *Hanna v. Plumer*, 380 U.S., at 468 [85 S.Ct., at 1142]. There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants. The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it.

*Id.* 446 U.S. at 752–53, 100 S.Ct. at 1986 (footnotes omitted).

As indicated by the discussion, *supra* pp. 1373–74, Federal Civil Rule 15(c) is consistent with the overall spirit of the federal rules "to have cases decided on their merits and not on technical niceties of pleading." *Goodman v. Poland*, 395 F.Supp. 660, 684 (D.Md.1975) (citation omitted). But the hurdle over which Mrs. Knauer must jump is the condition-precedent nature of the three-year provision in Maryland's wrongful death statute. Thus in this case, if plaintiff is to prevail, an essential element of a state-law based cause of action would be rendered ineffective by application of Federal Rule 15(c)—an application which would effectively wipe out a Maryland stat-utory condition precedent. Such application of Federal Rule 15(c) would run afoul of the Supreme Court's reasoning in *Ragan* as reiterated in *Walker*. In *Ragan*, the court wrote:

> [T]here can be no doubt that the suit was properly commenced in the federal court. But in the present case we look to local law to find the cause of action on which suit is brought. Since that cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden, and is subject to the same defenses in federal court as in the state court. It accrues and comes to an end when local law so declares. Where local law qualifies or abridges it, the federal court must follow suit. Otherwise there is a different measure of the cause of action in one court than in the other, and the principle of *Erie R. Co. v. Tompkins* is transgressed.

337 U.S. at 533, 69 S.Ct. at 1235 (citations omitted). And in *Walker*, Justice Marshall stated: "[W]e held, [in *Ragan*] that the service of summons statute controlled because it was an integral part of the state statute of limitations, and under [*Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)] that statute of limitations was part of the state-law cause of action." 446 U.S. at 746, 100 S.Ct. at 1983.

Moreover, if Federal Rule 15(c)'s relation-back principle were applied herein, that might well constitute a violation of the Rules Enabling Act, 28 U.S.C. § 2072:

> Under our notion of the proper distribution of power among the branches of the federal government, primary responsibility for the exercise of federal rulemaking authority is lodged with Congress and not the federal judiciary; thus, the rulemaking authority of the federal courts generally is understood to extend only so far as Congress expressly permits or as is necessary to effectuate important federal policies as defined by Congress. The mere fact, therefore, that Congress has the constitutional power to formulate substantive law in areas of federal con-

cern does not in itself give the federal judiciary an equal power, and certainly no such judicial power could reasonably be inferred from the grant of authority to the Supreme Court to prescribe general rules of practice and procedure. When *matters of state substantive law* are at issue, principles of federalism—which command that substantial deference be given to the ways in which the states have seen fit to structure social relationships in areas of state competence—are also implicated. Thus, even though Congress may have constitutional power to override state substantive laws and policies when exercising its authority to regulate the judicial process in the federal courts, federalism concerns together with considerations related to the separation of powers militate against recognizing a similar power in the federal courts, at least without explicit congressional authorization. Even if the Enabling Act did not include the "substantive rights" proviso, these considerations would dictate that judicial authority to prescribe procedural rules be exercised with a sensitive respect for the integrity of the structure of rights and responsibilities as defined by Congress and the states within their respective areas of competence. The inclusion of the proviso, whatever its original meaning and intent, serves to emphasize and reinforce these institutional constraints upon the Supreme Court's rulemaking authority under the Act.

19 Wright, Miller & Cooper, *supra* p. 14, § 4509, at 140–41 (footnotes omitted) (emphasis added).

■ "When there is no Federal Rule or federal statute directly in point, a good starting place for analyzing the *Erie* problem is *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, [356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)]." 19 Wright, Miller & Cooper, *supra* p. 1377 § 4511, at 176. "[I]t was decided in *Erie R. Co. v. Tompkins* that the federal courts in diversity cases must respect the definition of state-created rights and obligations by the state courts." *Byrd*, 356 U.S. at 535, 78 S.Ct. at 899. *Byrd* requires, therefore, an examination of whether Maryland's construction of the time period in its wrongful death statute as a condition precedent to bringing suit is "bound up" in rights and obligations created by state law "in such a way that its application in the federal court is required." *Id.* (citation omitted). The answer to that question would appear to be "yes." Application herein of Rule 15(c)'s relation-back provision would run afoul of one of the "twin aims of the *Erie* rule: ... avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142 (footnote omitted). While it is true that such application would not encourage forum-shopping, the other policy consideration noted in *Erie*—because when this suit was filed in 1980, George Knauer was alive—it would cause a result which would not occur in a Maryland court, and thus would add up to "inequitable administration of the laws."

If diversity jurisdiction did not exist herein, and if this case had originally been filed in a Maryland court, Ann Knauer could not have successfully stated a wrongful death action three years after her husband's death. Accordingly, *Erie* and its progeny do not permit this federal court in this case to redefine the elements of a cause of action established by Maryland statutory law.[12]

---

**12.** Md.R. 2–341, formerly Md.R. 320, which governs amendment of pleadings, does not specifically address relation back. Maryland's courts, however, recognize and apply the relation-back doctrine. *See, e.g., Crowe v. Houseworth,* 272 Md. 481, 485–89, 325 A.2d 592 (1974) (citing cases from 1896 to 1974); *Kirgan v. Parks,* 60 Md.App. 1, 14–15, 478 A.2d 713, *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984). In fact, as in federal relation-back practice, Maryland has adopted the view that when the original complaint gives a defendant notice of a claim based on specified conduct, an amended complaint will relate back. *See, e.g., Doughty v. Prettyman,* 219 Md. 83, 92–93 [148 A.2d 438] (1959). That liberal relation-back policy, however, appears not to have been used by any Maryland court to allow a claim to escape the bar of the time provisions of Maryland's Wrongful Death Act. Therefore, if this case had been brought in a Maryland state court, it would seem most

In addition, even if Federal Rule 15(c)'s relation-back doctrine did override Maryland's wrongful death statutory time limit in this case, that would not compel relation back if the amendment in question is deemed to state an entirely new cause of action based on facts different from the facts alleged in the original complaint. *See, e.g., Howard v. McCrory Corp.*, 601 F.2d 133, 136 (4th Cir.1979) (involving Maryland law); *Griggs v. Farmer*, 430 F.2d 638, 639 (4th Cir.1970) (per curiam) (involving Virginia law); 3 *Moore's Federal Practice, supra* p. 5, ¶ 15.15[3], at 15–196 (footnote omitted). This is true even though "[t]he Federal Rules have broadened the meaning of the concept of 'cause of action,' shifting the emphasis from a theory of law as to the cause of action, to the specified conduct of the defendant upon which the plaintiff relies to enforce his claim." *Id.* at 15–198 (footnote omitted), and seemingly is also true, despite the fact that Federal Civil Rule 15(c) calls for federal courts to apply the " 'same transaction and occurrence test.' " *See id.* at 15–208; Fed.R.Civ.P. 15(c). *See also Annot.* 71 A.L.R.3d 933 (1976) (citing cases reaching different results). In any event, the "same transaction and occurrence" test is not helpful to the plaintiff in this case.

In *Baltimore & Ohio Southwestern Railroad Company v. Carroll*, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566 (1930), the Supreme Court reversed a state court decision holding that a personal injury action brought pursuant to the Federal Employers' Liability Act could be amended to add a wrongful death action, and that an amendment to the complaint would relate back to the original complaint. Justice Sutherland, writing for a unanimous Court, concluded that the wrongful death action was a new and distinct cause of action different from the personal injury action—"one [is] for the loss and suffering of the injured person while he lived, and another for the pecuniary loss to the beneficiaries named in the act as a result of his death,"

*id.* 280 U.S. at 494, 50 S.Ct. at 183 (citations omitted), and that " '[a]lthough originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other.... One begins where the other ends....' " *Id.* at 494–95, 50 S.Ct. at 183 (citing to and quoting from *St. Louis, Iron Mountain & Southern Railway Co. v. Craft*, 237 U.S. 648, 658, 35 S.Ct. 704, 706, 59 L.Ed. 1160 (1915) ).

In *Gaudet v. Sea-Land Services, Inc.*, 463 F.2d 1331 (5th Cir.1972), *aff'd*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), Judge Clark commented upon the different losses which a personal injury action, on the one hand, and a wrongful death action, on the other hand, are designed to compensate:

> Damage elements in [the personal injury action] include pain and suffering, medical expenses, and loss of earnings. But [a wrongful death action] entails, though it is not always limited to, loss of support, loss of services (including society, care, and attention), loss of love and affection, grief or mental suffering of the survivors, and funeral expenses.

*Id.* at 1333 (citations omitted).

When the Supreme Court affirmed the Fifth Circuit in *Gaudet*, Justice Brennan noted:

> Most wrongful-death statutes have also been construed to create an independent cause of action in favor of the decedent's dependents, see F. Tiffany, Death by Wrongful Act § 23 (2d ed. 1913) (hereafter Tiffany); 2 Harper & James § 24.2; Schumacher 121. Thus, for example, Coleridge J., said of England's Lord Campbell's Act, "[I]t will be evident that this Act does not transfer this right of action to [the decedent's] representative, but gives to the representative a totally new right of action, on different principles," *Blake v. Midland R. Co.*, 18 Q.B. (Ad. & E., N.S.) *93, *110, 118 Eng.Rep.

unlikely that Maryland procedural law governing relation back would allow relation back of the instant wrongful death claim.

35, 41 (1852). See also *Seward v. The Vera Cruz,* 10 App.Cas. 59, 70 (Lord Blackburn). Interpreting the wrongful-death provisions of the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, this Court described the action as "independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had,—one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent," *Michigan C.R. Co. v. Vreeland,* 227 U.S. [59] at 68 [33 S.Ct. 192, 195, 57 L.Ed. 417 (1913) ]. *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. at 578 n. 5, 94 S.Ct. at 811 n. 5.

Similarly, in *Tucker v. State,* 89 Md. 471, 43 A. 778 (1899), one of the cases quoted from by Judge Procter in *Smith v. Westinghouse Electric Corp.,* 266 Md. 52, 291 A.2d 452 (1972), discussed *supra* p. 1375, the Court of Appeals of Maryland noted that the Maryland Wrongful Death Act

> has created a new cause of action for something for which the deceased person never had, and never could have had, the right to sue—that is to say, the injury resulting from his death. But notwithstanding all that the *wrongful act, neglect or default,* is of the same character as that for which the injured party could have sued, if he had survived the injury, and therefore the question of burden of proof is in no wise affected by the fact that the statute gives a new cause of action.

*Id.* 89 Md. at 479, 43 A. at 781 (emphasis in original). In *Tucker,* no time requirement was involved. Rather questions pertaining to burden of proof and justification for the killing of the decedent were at issue.

There are certain non-Maryland cases which take a different approach than does Maryland. For example, in *Caffaro v. Trayna,* 35 N.Y.2d 245, 360 N.Y.S.2d 847, 319 N.E.2d 174 (1974), Judge Jones, writing for the majority, with a dissent by Chief

Judge Breitel, for himself and one other member of the court, considered whether "the fact that an independent action for wrongful death [was] time-barred [would] necessarily foreclose amendment of the complaint in a pending action for conscious pain and suffering to include the action for wrongful death[.]" 360 N.Y.S.2d at 847, 319 N.E.2d at 174. Noting that the wrongful death action is a "creature of statute rather than of common law" and that "such action must be commenced within two years after the decedent's death," Judge Jones wrote that "[w]ere there no further applicable statutory provisions, ... the Trial Judge here would have had no choice but to deny the motion to amend as proposing a cause of action barred by the statute." *Id.* 360 N.Y.S.2d at 848, 319 N.E.2d at 175. New York law, however, contained other statutory provisions which, under some circumstances, modified the time restrictions in the Wrongful Death Act. Considering those provisions and the court's previous interpretation of them, Judge Jones concluded that "the two-year statute of limitations [was not] an element of [the wrongful death] cause of action." *Id.* 360 N.Y.S.2d at 848, 319 N.E.2d at 175. Judge Jones expressly did not decide what result would have obtained if the New York statutory period prescribed a condition precedent rather than a limitations provision. *Id.* 360 N.Y.S.2d at 850 n. 2, 319 N.E.2d at 176 n. 2.

In the course of his opinion, Judge Jones referred to New York's relation-back statute, which like Fed. R.Civ.P. 15(c) embodies a transaction or occurrence test, and concluded that the original complaint gave notice of the facts "on which the cause of action for wrongful death is predicated." *Id.* 360 N.Y.S.2d at 850, 319 N.E.2d at 176. Judge Jones also wrote:

> Inclusion of the cause for wrongful death will not significantly expand the scope of proof or the relevant legal considerations on the issue of liability. The amendment will, of course, introduce new aspects on the issue of damages, but defendant does not suggest how the fail-

ure to bring this cause within two years after the decedent's death has prejudiced him in the assembly or introduction of evidence in support of his defense as to such additional elements of damage.

*Id.* 360 N.Y.S.2d at 851, 319 N.E.2d at 177.[13]

In *Lamont v. Wolfe,* 142 Cal.App.3d 375, 190 Cal.Rptr. 874, 875–78 (1983), the original complaint contained personal injury and consortium actions. The injured spouse died during the pendency of the action. The surviving husband failed to amend the complaint to add, *inter alia,* a wrongful death action until after the limitations period in California's wrongful death statute had run. *Id.* 190 Cal.Rptr. at 875. Judge Johnson noted that the wrongful death and consortium actions of the surviving husband "are entirely distinct from any cause of action Berniece Lamont could have maintained during her lifetime." *Id.* at 877 (citations omitted). However, Judge Johnson also wrote that "[t]he injuries suffered by Ronald Lamont as husband suing for loss of consortium and as heir suing for wrongful death are personal to him and include the same elements of loss of love, companionship, affection, society, sexual relations and solace." *Id.* at 876. Treating the issue as one involving application of the doctrine of relation back to avoid the bar of limitations, Judge Johnson concluded that the statutory wrongful death claim "is not a wholly different cause of action but more a continuation under a different name of the original cause of action for loss of consortium," *id.* at 878, and that the "amended complaint for wrongful death filed by a husband after the statute of limitations had run relates back to a timely action by the husband for loss of consortium." *Id.* at 874.

Judge Johnson also wrote:

Defendants also argue that it is illogical to apply the relation back doctrine in

this case because it would result in Mr. Lamont's wrongful death action relating back to a date before it ever existed. This argument ignores the fact that in both claims Mr. Lamont is seeking recovery for essentially the same loss.

*Id.* at 878.

In *Bernier v. Keene Building Products,* No. 78–98P (D.Me. Feb. 26, 1985), Judge Gignoux, during a hearing on the record, decided that an untimely filed death claim in a diversity case involving Maine's wrongful death statute related back to the filing of the original complaint. Tr. at 24. In so doing, Judge Gignoux stated:

Rule 15C provides that an amendment relates back to the day of the original pleading when the claim asserted in the amended pleading arose out of the conduct transaction occurrence set forth in the original pleading.

Applying that rule in this case it seems clear that the conduct transaction of occurrence set forth in the original pleading was plaintiffs' exposure to Raymark's asbestos containing products, that the claim set forth in the amended pleading here, that is the wrongful death claim, arose out of the same conduct of transaction occurrence and that the fact that the amended pleading asserts a new cause of action, that is an action on—or a claim for damages under the Maine wrongful death statute is not sufficient to prevent relation back under Rule 15C.

The Court is aware of the holding of the United States Supreme Court in Baltimore Ohio South Railroad Company versus Carroll, 289 U.S. 491, 1930. That, however was decided prior to the adoption rules of civil procedure, and as the notes of the advisory committee regarding the 1966 amendments to Rule 15 state the rules, quote, import different criteria for determining when an amendment is to relate back....

---

**13.** *But see* Judge Davidson's review of the New York cases relating to that state's wrongful

death statute in *Weinberg v. Johns-Manville*

Tr. at 34–35.[14] (The transcript is filed in the court file in this case.)

In the within case, Mr. and Mrs. Knauer timely instituted a joint consortium claim, pursuant to *Deems v. Western Maryland Railway Co.*, 247 Md. 95, 231 A.2d 514 (1967), when Mr. Knauer commenced his personal injury action. But Maryland's wrongful death statute, as construed by Maryland's highest court, not California's, Maine's, or New York's wrongful death laws, as construed by the courts of those states, is the state law which this Court must consider herein in tandem with Federal Civil Rule 15(c).

In *Grady v. Irvine*, 254 F.2d 224 (4th Cir.), *cert. denied*, 358 U.S. 819, 79 S.Ct. 30, 3 L.Ed.2d 60 (1958), Judge Haynsworth considered the difference between a personal injury action and a wrongful death action, albeit not in the context of relation back. In *Grady*, the plaintiff, a citizen of Maryland, died during the pendency of his personal injury action instituted in the Western District of Virginia against a citizen of Virginia. Thereafter, counsel moved to substitute an administrator of the estate, a citizen of Virginia, "and to amend the complaint ... so as to convert the action into one for wrongful death" under the Virginia statute. *Id.* at 226. Judge Haynsworth first explained "that where a personal representative initially files an action for wrongful death, it is the residence of the representative, not that of his decedent, which is relevant in the resolution, for purposes of federal jurisdiction, of the question of diversity of citizenship." *Id.* In the usual case, diversity of citizenship is determined at the time the action is filed, and "[o]nce federal jurisdiction has attached, it is not defeated by a subsequent change in the citizenship of one of the parties." *Id.* In *Grady*, however, when the complaint was amended, the personal representative's citizenship was not diverse

from the plaintiff's. Judge Haynsworth noted a "great difference ... between a formal substitution of a personal representative to prosecute the action in aid of the same right asserted by his decedent and an amendment or supplemental bill which changes the nature of the right asserted and alters the substance of the action." *Id.* Judge Haynsworth concluded:

> The conversion of an action for personal injury into one for wrongful death is much more than a formal substitution of a party under Rule 25(a), Federal Rules of Civil Procedure. Allowed as a supplemental bill under Rule 15(d), it was such a new and different action, in complete substitution for the old and for the benefit of persons having no interest in the former action, as to call for a new determination of the basis of federal jurisdiction.

*Id.* at 228. Thus, in *Grady*, Judge Haynsworth, although he addressed jurisdictional considerations and not relation back issues *per se*, treated the Virginia statutory wrongful death action as a new cause of action, separate and distinct from a personal injury action.

In *Howard v. McCrory Corp.*, 601 F.2d 133 (4th Cir.1979), the plaintiff, who was the mother and surviving parent of a child whose death resulted from burns received when his pajamas ignited, brought suit initially for (1) the child's wrongful death; (2) the child's pain and suffering; (3) the medical and funeral expenses of her deceased husband who died after his son's death; (4) her deceased husband's grief; and (5) her deceased husband's loss of the child's companionship. *Id.* at 135. Nearly two and a half years after the commencement of the action in this federal district court, and more than three years after the cause of action arose, the plaintiff sought to amend her complaint to allege "a claim for burns

---

*Sales Corp.*, 299 Md. 225, 235–40 and nn. 8 & 9, 473 A.2d 22 (1984).

**14.** The original complaint, filed in May, 1978, alleged a personal injury action on behalf of Mr. Bernier. He died in February, 1979, during the pendency of the action. Mrs. Bernier was sub-

stituted as personal representative to bring the survival action in September, 1981. The motion to amend to add a wrongful death claim was not made until September, 1984, five and a half years after Mr. Bernier's death. Tr. at 25–27.

she suffered in attempting to rescue her son and for mental shock and anguish suffered by the plaintiff from seeing her child engulfed in flames...." *Id.* Although such claims would appear to have arisen from the same transaction and occurrence set forth in the original complaint, Judge Russell concluded that "since the proposed amended cause of action [set] forth an entirely new cause of action[, it] could not relate back to the original filing of the action under either state or *federal* rule." *Id.* at 136 (emphasis added) (citations omitted).

■ The views of the New York and California courts and of Judge Gignoux in *Bernier* are most persuasive and, indeed, to this Court, appealing. In none of those cases, however, were the courts faced with a state statute containing a condition precedent as opposed to a limitations provision. In this case, Maryland's statutory three-year time provision is a condition precedent—an essential element of the cause of action. In that context, and in light of *Grady* and *Howard,* this Court, sitting in a diversity case in which Maryland law is applicable, is required to reach a conclusion opposite to the ones reached by Judges Jones, Johnson, and Gignoux in cases which involved statutes of states other than Maryland. Accordingly, this Court holds that the relation-back principles of Federal Civil Rule 15(c) are inapplicable in this case, which is governed by the three-year condition precedent found in Maryland's Wrongful Death Act.[15]

## C. Tolling Pursuant to Maryland's Worker's Compensation Statute

Section 58 of article 101 of the Maryland Code provides in pertinent part:

Where injury or death for which compensation is payable under this article was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee, or in the case of death, his personal representative or dependents as hereinbefore defined, may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in case of joint tort-feasors against both....

When any employee has a right of action under this section against a third party, the period of limitations for such action, as to such employee, shall not begin to run until two months after the first award of compensation made to such employee under this article, and this section shall apply to [past] and future rights of action under this section.

Md.Ann.Code art. 101, § 58 (1985).

■ The question arises as to whether the three-year time provision of Maryland's wrongful death statute is tolled by section 58 of article 101. Under *Erie* and its progeny, state law controls the answer to that question in the absence of direct conflict with any federal rule. *See, e.g., Walker v. Armco Steel Corp.,* 446 U.S. at 752, 100 S.Ct. at 1986. State tolling provisions, like state statutes of limitations, apply in diversity cases. *Cf. Brown v. American Broadcasting Co.,* 704 F.2d 1296, 1299 (4th Cir.1983).

The Court of Appeals of Maryland addressed the issue of the tolling effect of article 101, section 58,[16] in *Smith v. Bethle-*

---

**15.** An Order of this Court dated December 16, 1983, establishing a trial schedule governing the 500 plus asbestos cases then pending before this Court, consolidated certain of those cases for trial, and in so doing, grouped certain cases depending upon the type of complaint; i.e., asbestos vs. cancer, lung cancer vs. mesothelioma, alive vs. deceased, and place and length of exposure. The within case was listed in the December 16, 1983 Order as a "mesothelioma/dead" case. Such listing has been continued in case-grouping Orders of this Court filed subsequent to December 16, 1983. But such listing does not

necessarily constitute the assertion of a wrongful death action. There may well be, in a given case, a meritorious basis for claiming damages in a survival action, but no basis for claiming wrongful death damages.

**16.** That question had been certified to the Court of Appeals of Maryland by this Court pursuant to the Uniform Certification of Questions of Law Act., Md.Cts. & Jud.Proc.Code Ann. § 12–601 to –609 (1984). *See Smith v. Bethlehem Steel Corp.,* 303 Md. at 216, 492 A.2d 1286.

*hem Steel Corp.,* 303 Md. 213, 492 A.2d 1286 (1985). In that case, the plaintiff, who had discovered in 1979 that he had asbestosis, instituted in this Court in 1981, a timely tort action against several asbestos manufacturers. Then, in 1982, plaintiff filed a worker's compensation claim with the appropriate Maryland administrative body but subsequently requested a stay of that latter claim pending the outcome of his federal civil action. In 1983, more than three years after he had discovered his injury, plaintiff requested leave of this Court to amend his complaint to join as defendants three additional asbestos manufacturers. *Id.* 303 Md. at 217–18, 492 A.2d 1286. Those three defendants argued that Maryland's three-year statute of limitations had run on plaintiff's personal injury claim against them. In opposition, plaintiff contended that section 58 tolled the running of that three-year limitation period with regard to his personal injury action against those defendants. *Id.* at 218, 492 A.2d 1286.

Judge Rodowsky, writing in *Smith* for Maryland's highest court, over a dissent by Judge Eldridge, held that when a civil action has been filed *prior* to commencement of the worker's compensation proceedings, section 58 does *not* toll the running of limitations. *Id.* at 222, 492 A.2d 1286. In so concluding, Judge Rodowsky wrote:

> Because the claim of the employer against the third party is by way of subrogation to the rights of the injured worker, the employer has no independent standing to sue the third party. Section 58 seems expressly to require compensation to have been both "claimed and awarded or paid" before standing can arise in the employer.... The injured worker, however, may institute a third-party action prior to an award of compensation without foregoing all right to compensation.... In cases where the worker files a third-party action prior to an award of compensation, "[t]he purpose of [present § 58] is fully gratified so long as the employer or insurer is afforded an opportunity to intervene and control the conduct of the action, to the

same extent as if they had instituted it, and obtain reimbursement out of any recovery."

*Id.* (quoting from *Johnson v. Miles,* 188 Md. 455, 460, 53 A.2d 30 (1947) (other citations omitted) ).

Judge Rodowsky also stated:

> On the other hand, if no third-party action is brought until an award of compensation the priorities regarding subrogation created by § 58 mean that "the right of action given by the section to the employer or insurer should be exclusive for two months after the award of the [Commission], and that subsequently it should be concurrent with the similar right conferred upon the injured employee or his dependents." *State ex rel. Mayor and City Council of Baltimore v. Francis,* 151 Md. 147, 152, 134 A. 26, 28 (1926).

*Id.* 303 Md. at 222–23, 492 A.2d 1286.

As to cases in which no third-party civil action is brought until *after* an award of compensation is paid and received, Judge Rodowsky explained the tolling effect of section 58 in these ways:

> We therefore conclude that the limitations problem addressed by § 58 ¶ 2 is that limitations on a cause of action which accrued upon consummation of the tort or discovery *could expire* during the two months following award while the employer has the exclusive right to institute the third-party action. During that two months the employer might fail to sue despite the employee's desire to sue. We therefore construe the second paragraph to effect, "as to such employee," a tolling of the otherwise applicable statute of limitations during the two months after award when the employee is excluded from instituting a third-party action. Thus "the period of limitations for such action, as to such employee, shall not [resume or] begin to run [again] until two months after the first award of compensation made to such employee under this article...."

*Id.* at 229, 492 A.2d 1286 (emphasis supplied) (brackets in original).

Earlier in his majority opinion, Judge Rodowsky had written:

> For reasons hereinafter set forth we shall hold that this paragraph tolls the running of unexpired limitations during the period when provisions in the first paragraph of § 58 limit to the employer the authorization to institute a civil action asserting the liability of a third party to the injured worker.

*Id.* at 216–17, 492 A.2d 1286.

■ In the case at bar, the facts relevant to the application of section 58, as that statutory provision is analyzed in *Smith,* are as follows:

(1) George Knauer filed a personal injury suit against various asbestos manufacturers on December 26, 1980.

(2) George Knauer died on May 1, 1982.

(3) His dependents filed a worker's compensation death claim on May 11, 1982.

(4) A worker's compensation award was granted on January 25, 1983.

(5) Ann Knauer filed a motion to amend the original complaint to add a wrongful death action and a survival action on May 6, 1985.

*Smith* teaches that the events needed to bring about tolling under section 58 did not occur in the within case, in which George Knauer's original complaint was filed in 1980 prior to (a) his death, (b) the filing in 1982 after his death of a worker's compensation claim, and (c) the award of worker's compensation in 1983. Thus, *Smith's* limited exception does not permit tolling herein pursuant to article 101, section 58.

If, however, neither George Knauer, prior to his death, nor anyone after his death, had instituted a case in this Court, seeking recovery against non-employers of George Knauer for injuries suffered by exposure to asbestos, *prior* to filing a worker's compensation claim, a different question would have been presented herein. Seemingly, under such a circumstance, the rationale of the majority opinion in *Smith* would have caused the two-months section 58 tolling sought by plaintiff herein, and would have resulted in extending the key date of May 1, 1985 (i.e., the third anniversary of George Knauer's death) until July 1, 1985, well after Anne Knauer filed, on May 6, 1985, her motion to assert a wrongful death claim.[17]

As to the survival action, George Knauer filed a timely personal injury claim *prior* to filing for worker's compensation. That personal injury action was changed by amendment after George Knauer's death to a survival action. Under these circumstances, section 58 would appear inapplicable to the within survival action for the reasons discussed *supra* pp. 1385–86. However, for the reasons discussed *infra* pp. 1386–87 *et seq.,* which have no connection with *Smith,* that survival action is not time barred.

## II. *Survival Action*

Defendants agree that the claim of George Knauer for certain damages sus-

---

17. In *Smith,* no compensation claim had been awarded when plaintiffs sought to amend their complaint to add three additional defendants. In the within case, compensation had been awarded when Anne Knauer sought to add wrongful death and survival actions. However, nothing in the majority or the minority opinions in *Smith* would appear to suggest that a worker's compensation award, which occurs *after* the court suit has been filed by the injured worker, would cause a different result than obtains under *Smith* in a case such as *Smith* in which a worker's compensation claim was filed after such court suit but in which no award had been made at the time plaintiffs sought to add three additional defendants. In addition, it would not seem that the assertion in this case of a wrongful death action, rather than the assertion as in *Smith* of claims against three additional defendants, provides any relevant or material distinction. The wrongful death claim of Anne Knauer is a new claim asserted after the running of Maryland's three-year statutory limitations period, and is thus barred by limitations and cannot be saved by a relation-back approach for the reasons set forth *supra* in this opinion. In *Smith,* the claims against three additional defendants, which were not raised prior to the running of Maryland's three-year statutory limitations period, were seemingly not subject to a relation-back approach.

tained before his death, such as (1) economic loss; (2) pain and suffering; (3) medical expenses; and (4) loss of consortium, seemingly are timely and can be asserted herein by Anne Knauer as personal representative of her husband's estate, pursuant to Maryland's survival statute, Md.Est. & Trusts Code Ann. § 7–401(x)(2) (1974). However, defendants contend that Anne Knauer's claims for other damages such as funeral and burial costs, which were not incurred until after her husband's death, are barred as untimely asserted, because Mrs. Knauer did not seek substitution as a personal representative until more than three years after her husband's death. *See* Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1984), which provides a three-year limitations period in civil actions.

▮ Federal Rule of Civil Procedure 25(a)(1) provides that "[i]f a party dies and the *claim is not thereby extinguished,* the court may order substitution of the proper parties." (Emphasis added.) "Rule 25(a) does not attempt to state what actions shall survive the death of a party. This is a function of substantive law.... To determine the substantive rights involved in or as a condition to substitution in a nonfederal case, the district court ... must look to state law." 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 25.04[1], at 25–31 (1985) (footnotes omitted) (hereinafter 3B *Moore's Federal Practice).* Thus, while Federal Civil Rule 25(a) governs the procedure for substitution, Maryland law controls as to whether a claim is extinguished by death. Pursuant to Maryland's survival statute, Mr. Knauer's death did not extinguish a cause of action instituted prior to his death. *See generally Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 158–60, 297 A.2d 721 (1972); *Stewart v. United Electric Light and Power Co.,* 104 Md. 332, 336, 65 A. 49 (1906).

There remains, however, the issue of whether a personal representative should have been substituted and should have made claim for post-death damages within three years of the death of George Knauer

in order for such personal representative to recover such damages. In *Trimper v. Porter Hayden,* 305 Md. 31, 501 A.2d 446 (Ct.App.1985),[18] Judge Rodowsky concluded that a wrongful death action not filed within three years of the decedent's death was time barred by Section 3–904(g), and that a survival action not filed within three years of the decedent's death was time barred under Maryland's general three-year statute of limitations. Md.Cts. & Jud.Proc. Code Ann. § 5–101 (1984). The decedent in *Trimper* had died of an alleged asbestos-related disease, but the plaintiff did not institute any case until more than three years after her husband's death. *Id.,* 501 A.2d 446. Plaintiff contended that her husband did not discover, and could not have discovered during his lifetime, that his disease was related to asbestos exposure. *Id.* She therefore sought application of the discovery rule, asserting that her husband's cause of action accrued when his personal representative discovered the cause of death. In rejecting plaintiff's said argument, Judge Rodowsky noted that "[t]he plain language of the Maryland wrongful death statute precludes us from applying to CJ § 3–904(g) the approach of the discovery rule...." *Id.,* 501 A.2d at 450.

As to the survival action, Judge Rodowsky wrote:

> The survival statute, unlike the wrongful death act, does not create a new cause of action unknown to common law. Rather, it changes the rule at common law under which certain actions by or against decedents abated with death....

> The survival action phase of the instant cases involves the construction of the word "accrues" in CJ § 5–101.

*Id.,* at 450–51. After considering case law and statutes, Judge Rodowsky concluded "that in situations involving the latent development of disease, any cause of action of the injured person accrues either (1) when he ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of

---

**18.** A copy of Judge Rodowsky's opinion has    been placed in the court file in this case.

his injury, or (2) at death, whichever first occurs." *Id.,* 501 A.2d at 457–58.

The facts of the case at bar differ significantly from those in *Trimper,* in which the decedent had not instituted a case before his death. Mr. Knauer, in the within case, filed a timely personal injury action during the pendency of which he died. The survival statute keeps alive the action commenced by George Knauer during his lifetime as to defendants named in the original complaint by allowing his representative to maintain the action after his death.

■ Under Federal Rule of Civil Procedure 25(a), a motion for substitution must be made within ninety days of the date on which death was *suggested* on the record.[19] That rule was amended in 1963 to eliminate the earlier requirement that substitution be made within two years after death, in order "to liberalize substitution after death. It is no longer the date of death that starts the time for substitution running.... Instead the time does not run until the death is suggested on the record by service of a statement of death." 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1955, at 657–58 (1972). *See also* 3B *Moore's Federal Practice, supra* p. 36, ¶ 26.06 [2.–1], at 25–61 ("[n]o time limit is placed by the ... Rule upon when the death must be so suggested"). In the case at bar, the suggestion of death and the motion to substitute were filed simultaneously on May 6, 1985. Such a procedure complies with Fed.R.Civ.P. 25(a). Accordingly, in the absence of any statutory time bar in Maryland's survival statute, Anne Knauer's substitution was timely accomplished insofar as the within survival action is concerned.

■ As to Ann Knauer's claims for post-death damages, the obstacle they must surmount is Maryland's general three-year limitations bar, a garden type limitation provision, and not a condition precedent such as that present in connection with Ann Knauer's wrongful death claim. Hence, Judge Phillips' analysis in *Davis v. Piper Aircraft,* 615 F.2d 606 (4th Cir.), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980), which is discussed in Part I *supra,* would appear to permit, and indeed to require, this Court to utilize the relation-back principles of Federal Rule 15 and to permit Ann Knauer to relate back her claims for post-death type of survival damages to the date George Knauer originally instituted this suit. That result, when contrasted with the result reached in Part I *supra* as to the wrongful death claims, means that it is crucial whether the time bar established by a state statute is a condition precedent and a threshold substantive element of a cause of action, on the one hand, or, on the other hand, merely a limitations bar to the successful assertion of an existing cause of action. But that is a distinction which the case law would appear to require this federal district court to recognize.

For the reasons set forth in this opinion, this Court will today file an Order denying defendants' motion to reconsider this Court's May 1985 Order granting summary judgment to defendants as to plaintiff's wrongful death claims, and denying defendants' motion to dismiss as to plaintiff's survival claims for post-death as well as pre-death damages.

---

**19.** Md.R. 2–241, which governs substitution of parties in cases instituted in the state courts of Maryland, contains no time period within which substitution of parties must occur. However, if that Maryland procedural rule did require that substitution of a personal representative and the institution of a survival action take place within a specific time period after death, there would seemingly be an *Erie* problem, because Fed.R.Civ.P. 25(a) and state law would then appear to be in conflict. *But see Boggs v.*

*Blue Diamond Coal Co.,* 497 F.Supp. 1105 (E.D. Ky.1980), in which the court concluded, after a thorough analysis of *Erie,* its progeny, the Rules Enabling Act, and constitutional considerations, that Rule 25(a) controlled over a Kentucky statute which set a one-year time limit for filing motions for substitution. *See also Asklar v. Honeywell, Inc.,* 95 F.R.D. 419, 424 n. 6 (D.Conn. 1982) (in a diversity action it is likely that Rule 25(a) controls over inconsistent state statutes (citing to *Boggs* )).