Nina Jo **CHUMNEY**, Administratrix of the Estate of Reynold Howard Chumney, Deceased, Plaintiff,

v.

**U.S. REPEATING ARMS COMPANY, INC.**, a subsidiary of BWA, Inc., BWA, Inc., individually, and Olin Corporation, Defendants.

No. Civ.A. 97–D–1690–S.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 8, 2000.

Leigh Ann Forstman, L. Andrew Hollis, Jr., Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, AL, Rufus R. Smith, Jr., Rufus R. Smith, Jr. & Associates, Dothan, AL, for plaintiffs.

Daniel P. Jaffe, Christine F. Miller, Mark A. Smith, Husch & Eppenberger, LLC, St. Louis, MO, Tabor R. Nova, Jr., Bal, Ball, Matthews & Novak, P.A., Montgomery, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is a Motion For Summary Judgment filed by Defendants U.S. Repeat-

ing Arms Company, Inc. ("USRAC") and BWA, Inc. ("BWA") on January 26, 1998 [1] ("USRAC's Mot."),[2] and a Motion For Summary Judgment filed by Defendant Olin Corporation ("Olin") on July 13, 1998 ("Olin's Mot."). On April 6, 1998, Plaintiff filed a Memorandum Brief in opposition to US-RAC's Motion For Summary Judgment, which the court construes as a Response ("Resp. to USRAC"). USRAC and BWA filed a Reply thereto on April 29, 1998 ("US-RAC's Reply").

On July 29, 1998, Plaintiff filed a Response to Olin's Motion ("Resp. to Olin"). Olin filed a Reply thereto on August 5, 1998 ("Olin's Reply"). On August 11, 1998, Plaintiff filed an additional brief in opposition to Olin's Motion, which the court construes as a Sur-Response ("Sur–Response to Olin"). Finally, on August 18, 1998, Olin filed an additional brief in support of its Motion, which the court construes as a Sur–Reply ("Olin's Sur–Reply").

After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that US-RAC's Motion For Summary Judgment is due to be granted and Olin's Motion For Summary Judgment is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a).[3]

The parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the

---

**1.** On January 28, 1998, the court issued an Order stating, in part, that it would construe the Motion for Summary Judgment filed by USRAC and BWA as a Motion To Dismiss. However, with regard to this Motion, the Parties have referred to and the court has considered matters outside of the pleadings. Rule 12(b) of the Federal Rules of Civil Procedure states that a motion to dismiss which includes matters outside of the pleadings, "shall be treated as one for summary judgment and disposed of as provided in Rule 56." Further, Rule 12(b) directs that all parties shall be given a reasonable opportunity to "present all material made pertinent to such a motion." FED. R.CIV.P. 12(b). Because the instant Motion has been pending for more than two years and because the Parties have addressed said Motion as one for summary judgment, the court finds that the Parties will not be prejudiced by the court construing the Motion as one for summary judgment. Accordingly, the court hereby vacates the

portion of its January 28, 1998 Order stating that it will construe USRAC's and BWA's Motion for Summary Judgment as a Motion To Dismiss. Instead, the court construes and addresses said Motion as one for summary judgment.

**2.** USRAC is a wholly owned subsidiary of BWA. Accordingly, the court sometimes refers to US-RAC and BWA collectively as USRAC.

**3.** Plaintiff is an Alabama resident. (Compl.¶ 1.) USRAC is a Massachusetts corporation with its principal place of business in Connecticut. (*Id.* ¶ 2.) BWA is a Delaware corporation with its principal place of business in Utah. (*Id.* ¶ 3.) Neither the pleadings nor the evidence indicate the state in which Olin is incorporated or has its principal place of business. However, Olin has not contested the court's diversity jurisdiction over this lawsuit.

truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED.R.CIV.P. 56(e); *see also Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. An action is void of material issues for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

The undisputed facts are as follows: On December 5, 1995, Reynold Howard Chumney, Plaintiff's Decedent ("Decedent"), was killed when his Winchester 30–30 Rifle bearing Serial Number 3234191 ("the Rifle") accidentally discharged and shot him in the head. (Compl.¶ 5.) The Rifle was manufactured and sold by Olin in 1968. (Giglio Aff. ¶¶ 6, 8.)

CARSU, Inc. ("CARSU") purchased the firearms manufacturing assets of Olin on July 20, 1981. (Resp. to USRAC at 2.) As part of this purchase, CARSU signed an Agreement of Purchase and Sale on July 8, 1981. Therein, CARSU agreed to defend and indemnify Olin for all product liability claims asserted on or after July 20, 1981, with respect to: (1) firearms manufactured by Olin's United States and Canadian affiliate plants and sold by Olin prior to July 20, 1981, other than product liability claims arising out of injuries which occurred before July 20, 1981; and (2) firearms completed and sold by CARSU for its own account.[4] (USRAC's Reply at 4.)

In 1986 CARSU filed for bankruptcy. (USRAC's Reply at 5.) In a March 25, 1987 letter to Olin, CARSU terminated its obligations under the Indemnification Provisions. (Cover Aff. ¶ 3, Ex. A.) This letter was signed by CARSU president and chief executive officer, Richard M. Pelton. After examining the letter, Olin initially objected to CARSU's termination of the Indemnification Provisions. However, in the course of negotiating and resolving its objections to CARSU's reorganization plan, Olin accepted and started defending all product liability cases involving firearms which Olin had made and sold on or after July 20, 1981. (*Id.* ¶ 5.)

The Bankruptcy Court for the District of Connecticut entered an order on December 22, 1987, confirming CARSU's Third Amended Plan of Reorganization ("the Plan"). (*Id.* ¶ 7, Ex. B.) The Plan became effective on December 29, 1987. (*Id.* ¶ 6.) In relevant part, the Plan provides:

---

4. Hereinafter, the court will refer to these two provisions as the "Indemnification Provisions."

5.1 Except as expressly otherwise provided in this Article V, any and all executory contracts including, without limitation, leases of [CARSU]: (i) which are not expressly rejected and disaffirmed before the entry of the Confirmation Order or (ii) which are not subject, before the entry of the Confirmation Order, to pending applications to reject and disaffirm, *shall be deemed to be assumed by [CARSU] before the entry of the Confirmation Order and may be assigned by the Trustee to [US-RAC] on the Effective Date.*

5.2 With respect to that certain Trademark License Agreement with Olin Corporation dated July 20, 1981, that Distribution Agreement with Olex, Inc. dated July 20, 1981, and any and all other executory agreements with Olin Corporation, it shall be a condition to the effectiveness of this Plan that on or before the Effective Date the same shall be modified in the manner mutually acceptable to [USRAC], Olin Corporation and/or Olex, Inc. As of the Effective Date, the Trustee shall assign to [USRAC] all of CARSU's rights and obligations under said agreements, as modified, and [USRAC] shall assume the same, and no determination to assume or reject any such agreements shall be deemed to have been made prior to the Effective Date.

(USRAC's Reply at 5–6) (emphasis added.) On December 29, 1987, USRAC, then named New Haven Arms Company, Inc., purchased the assets of CARSU from the bankruptcy trustee. (*Id.* at 7.)

On December 3, 1997, Plaintiff filed a Complaint in this court alleging the wrongful death of her Decedent in violation of Alabama law. In her Complaint, Plaintiff named only USRAC and BWA as Defendants. On May 20, 1998, Plaintiff filed a Motion For Leave To Amend Her Complaint, which the court granted. In her Amended Complaint, filed May 28, 1998, Plaintiff added

Olin as a Defendant and alleged against Olin each claim that she advanced against US-RAC and BWA in her original Complaint. Plaintiff's Amended Complaint contains five counts against each Defendant: Count I is a wrongful death claim under the Alabama Extended Manufacturer's Liability Doctrine; Count II is a wrongful death claim for products liability negligence; Count III is a wrongful death claim for negligent failure to warn; and Counts IV and V are for breach of warranty. Plaintiff seeks $5,000,000 in compensatory damages and costs. USRAC and Olin move for summary judgment on all five counts.

## IV. DISCUSSION

The court will discuss USRAC's and Olin's Motions For Summary Judgment separately, as they are based on distinct legal theories.

### A. USRAC's Motion For Summary Judgment

USRAC argues that it is entitled to summary judgment on each count in Plaintiff's Amended Complaint because it did not design, manufacture, sell, and/or distribute the Rifle. (USRAC's Mot. ¶¶ 4–7.) In response, Plaintiff argues that USRAC is a successor corporation to Olin and is, therefore, liable to Plaintiff because it expressly assumed Olin's product liability obligations for the Rifle when it purchased CARSU's assets in 1987. (Resp. to USRAC at 6–7.)

 In Alabama,[5] the general rule of successor liability is that where one company sells or transfers its assets to another company, the transferee is not liable for the debts and obligations of the transferor. *See Turner v. Wean United, Inc.,* 531 So.2d 827, 830 (Ala.1988); *Andrews v. John E. Smith's Sons Co.,* 369 So.2d 781, 785 (Ala.1979). However, an exception applies and the transferee can be held responsible for the liabilities of the transferor if (1) the transferee expressly agrees to assume the obligations of the trans-

---

**5.** A federal district court sitting in diversity applies federal procedural law and the forum state's substantive law. *See Hammer v. Slater,* 20 F.3d 1137, 1140 (11th Cir.1994); *Helmich v. Kennedy,* 796 F.2d 1441, 1443 (11th Cir.1986) (per curium). "In particular, the federal court must follow the decisions of the state's highest

court when that court has addressed the relevant issue." *Technical Coating Applicators, Inc. v. United States Fidelity and Guar. Co.,* 157 F.3d 843, 844 (11th Cir.1998); *see also Johnson v. Fleet Fin., Inc.,* 4 F.3d 946, 947 (11th Cir.1993) (per curium). Consequently, the court will apply the substantive law of Alabama in this lawsuit.

feror; (2) the transaction amounts to a *de facto* merger or consolidation of the two companies; (3) the transaction is a fraudulent attempt to escape liability; or (4) the transferee corporation is a mere continuation of the transferor. *See Turner*, 531 So.2d at 830; *Andrews*, 369 So.2d at 785.

Plaintiff contends that CARSU "bought" Olin's liabilities as to injuries occurring after July 20, 1981, by way of CARSU's July 20, 1981, purchase of Olin's assets. Further, Plaintiff asserts that USRAC subsequently "bought" CARSU's obligations as to the aforementioned liabilities when it purchased CARSU's assets from the bankruptcy trustee on December 29, 1987. (Resp. to USRAC at 7.) In support of her position, Plaintiff relies on § 5.2 of the Plan, which provides that "any and all other executory agreements with Olin corporation … shall … on or before [December 29, 1987,] be modified in the manner mutually acceptable to [USRAC], Olin Corporation and/or Olex, Inc." for the proposition that "all other executory agreements with Olin" included the Indemnification Provisions. (*Id.* at 3.) Since CARSU and Olin did not mutually agree to modify the Indemnification Provisions, but rather, CARSU unilaterally terminated its obligations under the Indemnification Provisions, Plaintiff argues that USRAC assumed product liability responsibility for the Rifle when it purchased CARSU's assets. (*Id.* at 3–7.) The court disagrees with Plaintiff for the following reasons.

█ The court finds that USRAC did not assume the future liabilities stemming from the Rifle when it purchased CARSU's assets on December 29, 1987. As stated, CARSU unilaterally terminated the Indemnification Provisions on March 25, 1987, by way of the letter to Olin from Richard M. Pelton, CARSU's president and chief executive officer. While this letter alone did not constitute the mutually acceptable modification required by § 5.2 of the Plan to extinguish CARSU's product liability obligations arising from the Indemnity Provisions, it did prompt Olin to consider the matter and ultimately concede to a mutually acceptable modification. Stated differently, even though Olin initially objected to CARSU's unilateral termination of

the Indemnification Provisions, Olin eventually, and before USRAC purchased CARSU's assets, acquiesced to CARSU's proposal for termination of CARSU, Inc.'s obligations under the Indemnification Provisions. Olin's acquiescence is evidenced by the uncontroverted affidavit of E. McIntosh Cover ("Cover"), who served as Olin's vice president and general counsel from August 1983 until April 30, 1993. In his affidavit Cover states as follows:

> Olin initially objected to CARSU Inc.'s termination of the INDEMNIFICATION PROVISIONS, but subsequently, in the course of negotiating and resolving Olin's objections to the Disclosure Statements for the reorganization plans, and prior to the December 29, 1987 effective date of the Third Amended Plan of Reorganization, Olin accepted and started defending all product liability cases involving applicable firearms Olin both made and sold.

(Cover Aff. ¶ 5.)

It follows that since Olin and CARSU terminated the Indemnification Provisions before USRAC purchased CARSU's assets, USRAC did not assume any obligation that CARSU may have had at one time to indemnify and defend Olin regarding the present action stemming from the allegedly defective Rifle. Furthermore, after USRAC proffered Cover's Affidavit, Plaintiff expressly agreed that Olin had reassumed product liability for the Rifle before USRAC purchased CARSU's assets: "Not until [USRAC] produced documents, including E. McIntosh Cover's affidavit, was it established that Olin re-assumed 'product liability' responsibility for the subject rifle." (Sur–Resp. to Olin at 2.)

Because the uncontroverted evidence establishes that Olin had reassumed product liability responsibility for the Rifle before USRAC purchased CARSU's assets, the court finds that there is no genuine issue of material fact as to USRAC's liability to Plaintiff: Simply stated, under the applicable law set forth above, USRAC cannot be held liable in this action. Accordingly, USRAC is entitled to summary judgment on each claim contained in Plaintiff's Amended Complaint.

### B. Olin's Motion For Summary Judgment

Olin does not dispute that it designed, manufactured, distributed, and sold the Rifle. It also does not dispute that it reassumed product liability responsibility for the Rifle from CARSU. However, Olin does dispute that it is liable to Plaintiff. Specifically, Olin relies on three theories to support its Motion For Summary Judgment. First, according to Olin, Plaintiff's claims are untimely. (Olin's Br. at 2–10.) Second, Plaintiff's claims for breach of warranty are actually wrongful death claims, which cannot be maintained under a breach of warranty theory. (*Id.* at 10–13.) Third, Plaintiff's breach of warranty claims cannot be maintained because Decedent died instantaneously or he was rendered immediately and continuously unconscious by the gunshot wound and, therefore, suffered no pain before his death. (*Id.* at 13–15.) Plaintiff has conceded partial summary judgment on Olin's second and third theories. (Resp. to Olin at 2.) Consequently, the dispositive issue before the court is whether Plaintiff's wrongful death claims against Olin, alleged in Counts I, II, and III of her Amended Complaint, are timely.

■ In Alabama, a wrongful death action must be filed within two years after the death of the decedent. *See* ALA.CODE § 6–5–410(d); *Buck v. City of Rainsville*, 572 So.2d 419, 422–23 (Ala.1990). Decedent died on December 5, 1995. (Compl.¶ 5.) On December 3, 1997, Plaintiff filed her original Complaint, naming only USRAC and BWA as Defendants. Therefore, her claims against USRAC and BWA were timely filed.

Plaintiff, however, did not file her Amended Complaint, adding Olin as a Defendant, until May 28, 1998, nearly six months after the two year limitation period had expired. Consequently, at first glance, it appears that Plaintiff's claims against Olin are time-barred. Yet, Plaintiff argues that the amendment to her Complaint relates back to the date that she filed her original Complaint, thereby making her claims against Olin timely. (Resp. to Olin at 2–5.) In advancing this argument, Plaintiff relies on Rule 15(c) of the Federal Rules of Civil Procedure.

Under Rule 15(c), an amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint[, 120 days after filing of the complaint], the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

FED.R.CIV.P. 15(c).

Plaintiff argues that the amendment to her Complaint meets the requirements of Rule 15(c)(3) and that Olin's Motion For Summary Judgment should, therefore, be denied. (Resp. to Olin at 3–5.) In contrast, Olin contends that Rule 15(c) is not applicable to this matter. (Olin's Sur–Reply at 2.) In support of this contention, Olin argues that the two year limitation period in ALA.CODE § 6–5–410 (Alabama's Wrongful Death Statute), is a statute of creation, not a statute of limitations, to which relation back under Rule 15(c) does not apply in Alabama unless a plaintiff has employed the fictitious defendant practice set forth in Rule 9(h) of the Alabama Rules of Civil Procedure. (*Id.*) Therefore, because Plaintiff did not employ fictitious party pleading in this matter, Olin claims that Plaintiff is precluded from relying on the relation back provision in Rule 15(c) of the Federal Rules of Civil Procedure. (*Id.*) For the reasons to follow, the court disagrees with Olin.

Olin is correct that the limitation provision of § 6–5–410 is a statute of creation, as opposed to a statute of limitations. *See Ex parte FMC Corp.*, 599 So.2d 592, 594 (Ala.1992). As the Alabama Supreme Court explained in *Ex Parte FMC Corp.*,

> [i]t is well settled that the time limitation set out in § 6–5–410(d) is part of the substantive cause of action and that it is not subject to any provision intended to temporarily suspend the running of a limitations period. The two-year period is not a limitation against the remedy only, because after two years the cause of action expires.

*Id.; see also Buck*, 572 So.2d at 424 ("[The] two-year period [in § 6–5–410] is a substantive part of the cause of action and is not to be treated as a statute of limitations....").[6] While it is clear that Rule 15(c) applies to statutes of limitations, the issue of whether Rule 15(c) applies to statutes of creation is somewhat less obvious.

The Supreme Court of Alabama has stated, in dicta, that "the characterization of § 6–5–410 as a statute of creation ... is immaterial as to whether the relation back principle of Rule[ ] ... 15(c) is applicable." *Ex parte FMC Corp.*, 599 So.2d at 594. Nevertheless, Olin maintains that untimely amendments to actions brought under statutes of creation cannot relate back to the filing of the original complaint. (Olin's Br. at 6–9; Olin's Reply at 5.) In support of this proposition, Olin relies on *Resolution Trust Corp. v. Olson*, 768 F.Supp. 283 (D.Ariz.1991), and *Knauer v. Johns–Manville Corp.*, 638 F.Supp. 1369 (D.Md.1986). Yet, for the reasons discussed below, the court finds that Olin's reliance on *Olson* and *Knauer* is misplaced.

In *Olson*, Kenneth and Valera Olson ("the Olsons") executed a guarantee in connection with a loan made by Sun State Savings and Loan Association ("Sun State") to BKO, an Arizona general partnership. *See* 768 F.Supp. at 284. In connection with the loan, BKO executed a promissory note secured by a deed of trust to Sun State. *See id.* BKO allegedly defaulted on the note and Sun State accelerated the debt and conducted a trustee's sale on April 17, 1990. *See id.* After the trustee's, sale BKO remained indebted for the amount of $1,132,420.14 to Sun State. *See id.*

On July 17, 1990, Resolution Trust Corporation ("RTC"), conservator of Sun State, filed a complaint seeking a deficiency judgment against the Olsons. *See id.* Before the Olsons answered, RTC filed its first amended complaint on August 6, 1990. *See id.* In its first amended complaint, RTC neither referenced the April 17, 1990 trustee's sale nor mentioned the deficiency claim contained in its original complaint. *Id.* Instead, RTC's amended complaint sought to recover on the guarantee contract executed by the Olsons. *See id.* On October 10, 1990, RTC filed its second amended complaint, attempting to reinstate the deficiency language used in its original complaint. *See id.*

The Olson's moved for summary judgment, contending that the entire deficiency action was time-barred by Arizona Revised Statute § 33–814(D), which provided that a deficiency judgment action must be brought within three months of the trustee's sale. *See id.* Because RTC's second amended complaint was filed 175 days after the trustee's sale, the Olsons alleged that the second amended complaint was untimely. *See id.* In contrast, RTC contended that the second amended complaint related back to the date that the original complaint was filed, and, thus, was timely. *See id.* at 284–85. The district court found that the three month

---

6. In *Cofer v. Ensor*, the Supreme Court of Alabama elaborated on the distinction between a statute of creation and a statute of limitations as follows:

> In one [a statute of creation], the limitation [period] is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself. In the other, [a statute of limitations], the limitation is deemed to affect only the remedy and does not constitute part of the substantive right. By affecting the remedy, it is meant that the statute establishes the time frame in which a party may seek to enforce his claim. The running of the latter type of statute of limitations does not extinguish a party's right, but merely precludes his judicial assertion of that right.

473 So.2d 984, 987 (Ala.1985) (quoting *State, Dept. of Revenue v. Lindsey*, 343 So.2d 535, 537 (Ala.Civ.App.1977)). Consequently, statutes of limitations are subject to tolling, whereas statutes of creation are not. *See id.*

limitations period of Arizona Revised Statute § 33–814(D) was a statute of repose, and, thus, Rule 15(c) of the Federal Rules of Civil Procedure was inapplicable. *See id.* at 285. In reaching this conclusion, the *Olson* court reasoned that "[a] statute of limitations is procedural in nature while a statute of repose is substantive in that it defines a right rather than merely limits its enforcement." *Id.* Moreover, the *Olson* court stated that "[r]elation back under Rule 15 does not apply when the statute at issue defines substantive rights rather than merely limiting procedural remedies." *Id.* Because substantive time limits imposed by state law are binding on federal courts, the *Olson* court concluded that RTC could not recover a deficiency under Arizona Revised Statute § 33–814(D). *See id.* at 285–86.

After carefully examining *Olson,* the court finds this decision unpersuasive as to the instant case. While the court agrees that substantive time limits in state law statutes of creation are binding on a federal court sitting in diversity, that rule does not resolve the issue here. In general terms, the issue presently before the court is whether a plaintiff's amendment to her complaint that adds a new defendant can relate back to the original, timely-filed complaint. The answer being in the affirmative when a statute of limitations provides the time limitation, the precise issue in this case is whether a different result is justifiable when a statute of creation provides the time limitation.

The court disagrees with the *Olson* court's total reliance on the fact that a statute of limitations is procedural in nature and a statute of creation is substantive in nature to determine the answer. While the procedural/substantive distinction is relevant when the issue is whether to toll the limitation period, *see Cofer,* 473 So.2d at 987, the distinction is not relevant when relation back is at issue. "Statutes of [creation] are directed towards eliminating equitable tolling and other methods of extending limitations periods." *In re Sharps Run Assoc., L.P.,* 157 B.R. 766,

785 (D.N.J.1993). That policy is not implicated by relation back because application of relation back does not extend the limitation period. Instead, relation back merely allows a plaintiff to "change" defendants, if she has timely filed her original complaint and the requirements of Rule 15(c) of the Federal Rules of Civil Procedure are otherwise satisfied. Furthermore, nothing in Rule 15(c)'s language leads the court to believe that it does not apply to statutes of creation. To the contrary, the policy behind the recent amendment to Rule 15(c) is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." Advisory Comm. Notes to 1991 Amendments to Rule 15, quoted in Federal Civil Judicial Procedure and Rules at 100 (West 1998 ed.). Therefore, the court finds that if the expiration of the statute of limitations does not bar the correction of an "inconsequential pleading error" from relating back, then neither does the expiration of a statute of creation's limitation period. *See id.*

*Knauer* is also unhelpful to Olin. In *Knauer,* George Knauer and his wife, Ann, filed suit on December 26, 1980, against several asbestos manufacturers alleging personal injury and consortium claims. *See* 638 F.Supp. at 1372. On May 2, 1982, George Knauer died. *See id.* Ann Knauer moved to amend the original complaint on May 6, 1985, to add a survival action and a wrongful death action. *See id.* The court granted her motion. *See id.* The manufacturers moved to dismiss, contending that Ann Knauer's wrongful death action was time-barred under Maryland's Wrongful Death Act, which required that wrongful death actions be filed within three years of the death of the injured person. *See id.* at 1373. The *Knauer* court found that the three year limitation was a statute of creation. *See id.* at 1375–76. Relying on *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny,[7] the *Knauer* court concluded that

7. *Erie's* progeny, which the *Knauer* court analyzed, includes *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Ragan v. Merchants Transfer & Ware-*

Rule 15(c) of the Federal Rules of Civil Procedure did not save Ann Knauer's wrongful death claim because the suit, if filed in a Maryland state court, would be time-barred. *See id.* at 1379. Specifically, if the federal court allowed the claim to relate back, it would amount to an "inequitable administration of the laws," the avoidance of which was one of the policies behind the rules announced in *Erie* and its progeny. *Id.* "If diversity jurisdiction did not exist herein, and if this case had originally been filed in a Maryland court, Ann Knauer could not have successfully stated a wrongful death action three years after her husband's death." *Id.*

The rationale behind the *Knauer* court's decision to disallow relation back is not applicable in the instant action. Specifically, the *Knauer* court declined to apply Rule 15(c) of the Federal Rule of Civil Procedure in order to avoid an "inequitable administration of the law." *Id.* The *Knauer* found that, if it had applied Federal Rule 15(c), it would have reached a result contrary to the result which a Maryland state court would have reached had the case been filed there. *See id.*

In contrast, in the case at bar, had Plaintiff filed this case in an Alabama state court, that court would have presumably reached a result identical to the one which a federal court would reach in applying Rule 15(c) of the Federal Rules of Civil Procedure. That is because the language of Alabama Rule of Civil Procedure 15(c) is virtually identical to its federal counterpart. *See* ALA.R.CIV.P. 15(c). The 1995 amendment to A.R.C.P. "adapts the form of [Alabama] Rule 15(c) to the present version of F.R.Civ.P. 15(c). It acknowledges the availability of relation back under circumstances where a federal cause of action would be saved by federal principles of

relation back." Committee Comments to October 1, 1995, Amendment to Rule 15, quoted in Alabama Rules of Court at 39 (West 1998 ed.). In other words, Alabama state courts are to apply relation back as it is applied in federal court, thus there is no conflict between the federal and Alabama procedural rules governing relation back. Consequently, unlike in *Knauer*, a finding by the court that Rule 15(c) of the Federal Rules of Civil Procedure applies in this case will not result in an "inequitable administration of the law."[8]

■ In sum, based on the following reasons, the court finds that Rule 15(c) of Federal Rules of Civil Procedure applies to Plaintiff's amendment to her complaint: (1) the language of Federal Rule 15(c) indicates that it applies to both statutes of creation and statutes of limitations; (2) application of Federal Rule 15(c) here will not lead to a result different than that which an Alabama court would reach applying Alabama Rule of Civil Procedure 15(c); and (3) the policy behind Federal Rule 15(c) is not hindered by applying it to statutes of creation.

The remaining issue is whether Plaintiff's amendment to her complaint satisfies the requirements of F.R.C.P. 15(c). The four prerequisites to a relation back amendment under F.R.C.P. 15(c) are: (1) the claim asserted in the amendment must have arisen out of the conduct set forth in the original complaint; (2) the defendant brought in by the amendment must have had notice of the institution of the action within 120 days of the filing of the original complaint; (3) the defendant to be brought in by the amendment must or should have known that but for a mistake concerning the identity of the proper party the action would have been brought against it; and (4) the defendant to

---

*house Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). *See* 638 F.Supp. at 1376–79.

**8.** Similarly, Olin's argument that relation back applies only when the plaintiff has followed the fictitious party practice pursuant to Rule 9(h) of the Alabama Rules of Civil Procedure also fails. As amended, Rule 15(c) of the Alabama Rules of Civil Procedure permits a separate basis for relation back by principles applicable to fictitious party practice pursuant to Alabama Rule 9(h). *See* ALA.R.CIV.P. 15(c)(4); Committee Comments to October 1, 1995, Amendment to Rule 15, quot-

ed in Alabama Rules of Court at 39 (West 1998 ed.).

*Ex Parte FMC Corp.,* 599 So.2d 592 (Ala.1992), upon which Olin relies, (Olin's Reply at 3–4,) was decided in 1992, before Rule 15(c) of the Alabama Rules of Civil Procedure was amended to read and be applied identically to its federal counterpart. Under the plain language of the current Alabama Rule 15(c), and its Comments, fictitious party practice is one, but not the only, means by which an amendment to a complaint may relate back to the original complaint.

be brought in by the amendment will not be prejudiced in maintaining a defense on the merits. *See* FED.R.CIV.P. 15(c); *Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1408 n. 3 (11th Cir.1998).

As a preliminary matter, Olin argues that Plaintiff's amendment does not meet the requirements of Rule 15(c) because her amendment adds a defendant, rather than changes the defendant named in the original complaint.[9] (See Olin's Reply at 7–10.) The Eleventh Circuit's recent decision in *Powers v. Graff*, 148 F.3d 1223 (11th Cir.1998), requires that the court reject Olin's argument.

In *Powers*, the plaintiffs filed suit against a brokerage company and a group of individual brokers alleging federal securities law violations. *See* 148 F.3d at 1224–25. After the applicable statute of limitations had expired, the plaintiffs amended their complaint to add several defendants. *See id.* at 1225. The district court granted the added defendants' motion for summary judgment, finding that the amendment did not relate back and was, thus, untimely. *See id.*

On appeal, the Eleventh Circuit affirmed. *See id.* The Eleventh Circuit stated that the purpose of Rule 15(c) is to permit amended complaints to relate back to the date of the original complaint when the amended complaint corrects a "mistake" about the identity of the defendant. *Id.* at 1226. However, the *Powers* court held that the purpose of Rule 15(c) is not furthered in "cases where the newly added defendants were known to the plaintiff before the running of the statute of limitations and where the potential defendants should not necessarily have known that, absent a mistake by the plaintiff, they would have been sued." *Id.* The *Powers'* court reasoned that F.R.C.P. 15(c)'s requirements were not satisfied because the plaintiffs knew the identities of the defendants early in the litigation and should have known that they were the proper parties to the suit. *See id.* at 1227. "Before the statute of limitations period ran, Plaintiffs knew Defendants' identities.... [O]nly when [one of the original Defendants] faced possible insolvency did Plaintiffs amend their complaint to

add these known Defendants." *Id.* Accordingly, the court concluded that there was never a "mistake" about the identities of the defendants; rather, plaintiffs made a conscious choice not to originally sue the defendants. *See id.* at 1228.

■■■ The court finds that, under *Powers*, the relevant issue in this case is not whether the amendment seeks to "add" or "change" a defendant, but instead whether the amendment corrects a "mistake" about the identity of the defendant. Furthermore, whether a plaintiff made a "mistake," rather than a conscious choice, in originally omitting the relevant defendant turns on whether the newly added defendant was known to the plaintiff before the running of the statute of limitations. *See Powers*, 148 F.3d at 1226. Applying this principle to the case at bar, the court finds that Plaintiff was mistaken as to the identity of the proper defendant when she filed her Complaint. Plaintiff alleges that at the time she filed her Complaint she believed that USRAC manufactured the Rifle, and that it was not until later that she learned of Olin's potential involvement in its manufacture. (Sur–Resp. to Olin at 1–2.) Moreover, Daniel Jaffe ("Jaffe"), Olin's counsel, acknowledged that Chumney did not have notice that Olin was the manufacturer of the Rifle until January 26, 1998, well over one month after the limitations period had expired. (Jaffe Aff. ¶ 8.) Therefore, it is undisputed that Plaintiff was mistaken as to the identity of the proper or potentially proper defendant until January 26, 1998. Under these circumstances, unlike the plaintiff in *Powers*, Plaintiff did not make a conscious choice not to originally sue Olin. Instead, she did not know of Olin's involvement until January 26, 1998. Accordingly, the court finds that it is immaterial that Plaintiff seeks to "add," not "change," a defendant.

■■■ Analyzing the facts in the case at bar under the four elements of Rule 15(c) of the Federal Rules of civil Procedure, the court finds that, first, there is no dispute that the claims asserted in Plaintiff's Amended Complaint arose out of the conduct set forth in her original Complaint. Second, the rec-

---

9. Olin's argument is based on Rule 15(c) of the Federal Rules of Civil Procedure stating that an amendment of a pleading relates back to the date of the original pleading when "the amendment

changes the party or the naming of the party against whom a claim is asserted...." FED. R.CIV.P. 15(c)(3).

ord shows that Olin had notice of the institution of the action within 120 days of the date that Plaintiff filed her complaint. Jaffe stated that Olin first received notice of Plaintiff's lawsuit against USRAC on January 6, 1998, 34 days after Plaintiff filed her Complaint. (Jaffe Aff. ¶ 2.) Olin contends that the notice requirement of Rule 15(c) of the Federal Rules of Civil Procedure requires that Olin must have received notice of Plaintiff's decision to add it as a defendant within 120 days of the filing of her complaint. (Olin's Sur–Reply at 5.) The court, however, finds Olin's argument unpersuasive. Assuming its other elements are satisfied, Federal Rule 15(c) only requires that the added defendant receive notice of the lawsuit within 120 days. *See* FED.R.CIV.P. 15(c)(3). Furthermore, when the original and the added defendants are represented by the same counsel, as USRAC and Olin are here, the institution of an action against one serves to provide notice of the litigation to the other. *See Jacobsen v. Osborne,* 133 F.3d 315, 320 (5th Cir.1998) ("[N]otice [for purposes of F.R.C.P. 15(c) ] may be imputed to the new party through shared counsel."); *G.F. Co. v. Pan Ocean Shipping Co., Ltd.,* 23 F.3d 1498, 1503 (9th Cir.1994) (concluding that F.R.C.P. 15(c)'s notice requirement is satisfied when the parties are so closely related that notice to one serves to provide notice to the other).

Third, Olin must or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it. As discussed, USRAC and Olin are represented by the same counsel, and Olin itself knew of Plaintiff's suit against USRAC on January 6, 1998. Olin also knew or should have known on that date that it manufactured and sold the Rifle. Therefore, within five weeks of Plaintiff filing her Complaint, Olin knew of should have known that, but for Plaintiff's mistake in naming USRAC as defendant, Olin would have originally been named as a defendant. Similarly, the fourth element is also met here. Since USRAC and Olin are represented by the same counsel and there were only a few weeks between the date Plaintiff filed suit against USRAC and the date Olin became aware of the litigation, Olin will not be prejudiced in maintaining a defense on the merits.

Because the court finds that Rule 15(c) of the Federal Rules of Civil Procedure allows Plaintiff's amendment adding Olin as a defendant to relate back to the date of her timely complaint, the court concludes that Plaintiff's amendment was timely.

### V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that the Motion for Summary Judgment filed by USRAC and BWA be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that Olin's Motion for Summary Judgment be and the same is hereby GRANTED in part and DENIED in part as follows:

1. GRANTED with respect to Plaintiff's breach of warranty claims against Olin.

2. DENIED with respect to Plaintiff's wrongful death claims against Olin.

A Rule 16 Scheduling Order will be issued contemporaneously with this Memorandum Opinion And Order.